Spencer, J.
The only question in this case is, whether any suit can be maintained against the representatives of a deceased postmaster, for the embezzlement of money by a clerk in the office, by taking the same out of a letter deposited in the office for transportation by thd mail.
i I think that this action is not maintainable against the representatives. I avoid giving any opinion whether the principal, if alive, would be responsible for the fidelity of thé clerk, either under the particular circumstances of this case, or on general grounds. It is a general and universal proposition that personal actions founded in tort, or for mis-r feasance, die with the person. That this cause of action-arises ex delicto cannot be controverted no action would, lie on an assumpsit, because, though the clerk received the money, it was taken feloniously and contrary to his duty and trust; it never came to the hands of the intes'l-tate.* The regular form of declaring would be on the misfeasance of the clerk, and the only plea would be not guilty. There is not in my recollection an instance of assumpsit having been brought in a case like the present. From a variety of cases which confirm the position that this action cátinot be maintained against the representatives of a party, I will cite only those of Hambly v. Trott† and Baily v. Births Wife.‡ In the case first cited, Lord Mansfield considered the plea of not guilty as decisive. That was an action of trover, and though his lordship considered it substantially an action founded on property, it was held not to lie. He says, “ if it is a sort of u injury by which the offender acquires no gain to himself “ at the expense of the sufferer, then the only reparation u is, for the delictum in damages to be assessed by a ju 4t ry, but where, besides the crime, property is acquired *403 M which benefits the testator, there an action shall survive <c against the executor, as for instance, the executor shall “ not be chargeable for the injury done by cutting down “ another’s trees, but for the benefit arising to his testator “ for the value or sale of the trees he shall.” The cited from Sir T. Raymond, goes further. It was an action on the case ; the declaration stated the plaintiff to have been possessed of a cow, which he delivered to the defendant’s testator to keep in his pasture for the plaintiff, and to be re-delivered to him, but which he sold, and converted, and disposed of the money to his own use; the plea was not guilty; the jury found, for the plaintiff, and the judgment was arrested on the ground that it was a tort with which the executor ought not to he charged. This case is cited by Lord Mansjield in the case of Hambly & Trott with approbation. It is agreed, in all the books, that an action does not lie against the representatives of a sheriff for an escape, whether suffered by himself or his deputy, and the reasons are, that the form of action requires a plea of not guilty, and that the guilt of a deceased per-, son is tried, and that the assets are not benefited. Whether originally the law was wisely established is not for me to inquire ; it is sufficient for me, that it is e stablish* ed, and that we are. bound to pronounce it. The plaintiff must be nonsuited.
Kent, C. J. Thompson, J. and Tompkins, J. concurred..
Livingston, J.
This case is very distinguishable from those that were cited. In Lane v. Cotton & Frankland, there was an express provision in the patent, constituting the defendants postmasters-general, “ that they “ should not be chargeable to account for the mismanage- “ ment or default of their inferior officers, but only for “ their own voluntary defaults.” Though I should have supposed that this was intended only as a protection against the government’s calling on them for such defaults, it is a clause which is relied on in giving judgment. It is Also considered ns a circumstance in favour of the defend* *404 ants that their reward was settled, and not depending, as here, on tlie riumber of letters carried; but even in that case jf0¡t Was in favour of their liability ; and so, probably, would the other judges have been, if the defendants had taken the office as the intestate did here, on the express condition, as stated in the instructions, of being responsible for the “ fidelity of his agents.” It is highly reasonable that this should be so, for such liability will greatly increase che security of the public, not only by preventing collusions between the principals and their servants, but by rendering the former more circumspect in their choice, more watchful over their clerks, and, particularly, more attentive in taking bonds for their faithful conduct. It .may, it is true, now and then, fall hard on a postmaster : but it is better it should be so than that individuals should be without remedy for injuries committed by their agents.r
But if a cause of action ever existed, it died, it is said, with the intestate ; though this was not strongly insisted on. To go through all the cases which have sprung front the maxim of actio personalis moritur cum persona would tend, as Lord Biansfield. says, “ rather to confound than “ elucidate.”- If literally applied, not even debt, or assumpsit would lie against executors on a note or bond of their testator. This, however, is not its construction ; for courts, finding the inconvenience of being frequently called upon to apply a maxim, the generality of whose language is' well calculated to mislead, have endeavoured to restrain it within reasonable bounds. In England, ' therefore, if the suit, which is brought, does not require a -plea of not guilty,, it will generally be sustained. It must, and ever will, remain incomprehensible to one of common discernment only, why this criterion has been adopt•ed as a test of an executor’s liability, rather than the intrinsic merits of the -plaintiff’s demand. Shall a man carry away the goods, or convert the property of another, -or defraud him -to any -extent, or injure him by pis negli *405 gence, and his estate not be answerable, because no action but that or* trespass, trover, deceit, or some such will lie, the general issue in all which is not guilty P In a case of bankruptcy,* we refused to put a defendant’s respon,',il , sibility to so precarious a test, but looked at the real cause of action, which we considered as barred by the discharge, though a plea of not guilty might properly have been interposed. Without, however, interfering with any adjudged case, it may safely be said, consistently too with the case of Hambly v. Trott,† that wherever there be a contract expressed or implied, and that on a valuable consideration, from which a benefit has, or might have resulted to the testator, for the faithful conduct of a third person, an action will lie against his executors on the contract, whether the breach alleged be a tort, or any other misconduct of the party. Such is the case here. A postmaster accepts an office, highly beneficial; and, in consideration of such advantages, assumes a responsibility for his clerks. If this be the situation of a postmaster, it would be easy and right to sue him, or his executors in a special action on the case on his contract, for the misfeasance of his clerk, which would drive the defendant to his plea of non-assumpsit, and relieve the case from the difficulty that would arise from the plea of not guilty. Though a tort in the clerk, it is on his contract that the postmaster is liable ; and accordingly, it was the opinion of Gould, in the case cited, that “ if any thing could “ support this action, it .must be a contract expressed or “ implied.” If an action, then, can be brought on the contract, as I think it can, there is an end of all the difficulty about the plea. The plaintiff, in my opinion, is entitled to judgment.
Judgment of nonsuit.

 3 Wils. 429, 443. 1 B. & Puller, 404, &c. 1 East, 106. 6 Term, 125. 1 Salk. 282. The cases in Salk. & 1 B. & Puller state the ground on which the master is liable,

 Cowper, 371.

 T. Ray. 72.

 Ante, p 37. Hatten v. Speyer.

 Cowper, 371

 Ld Ray. 646.